# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONY LEE MUTSCHLER,        )
      **Plaintiff,**          )     **Civil Action No. 09-265 Erie**
                     )
      **v.**                 )
                     )     **Magistrate Judge Susan Paradise Baxter**
SANDY MALENA, <u>et al.</u>,     )
      **Defendants.**        )

## <u>OPINION AND ORDER</u>[1]

### I.    <u>Introduction</u>

Plaintiff, Tony Lee Mutschler, is a state prisoner who was incarcerated at the State Correctional Institution Albion ("SCI Albion") at the time of the events at issue in this case. Pending before the Court is Defendants' motion for summary judgment [ECF No. 62]. For the reasons set forth below, the Court will grant the motion.

### II.    <u>Discussion</u>

#### A.    **Background**

Plaintiff has filed this civil action pursuant to 42 U.S.C. § 1983 against Sandy Malena, a Registered Nurse who is now retired but who previously worked at SCI Albion, and Maxine Overton, that prison's Corrections Health Care Administrator. Plaintiff has numerous health problems, including a neurogenic bladder condition, which necessitates that he use a catheter.[2] [ECF No. 64, ¶¶ 2-3]. When he was at SCI Albion, he would go to the infirmary to pick up his medical supplies, including catheters, urine bags, leg straps, and adult diapers. [<u>Id.</u>, ¶ 6]. Malena worked at the infirmary and was one of the

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Plaintiff uses a "Texas catheter," which is a male, external catheter that fits over the penis like a condom and catches the urine in a bag that is attached to the leg by straps. [ECF No. 64, ¶ 4].

individuals who handed out the supplies to the inmates. According to Defendants, there are over 2000 inmates at SCI Albion and roughly a third of them come to the infirmary for various medical supplies and medications, making the infirmary a busy place. [Id., ¶ 39].

Plaintiff also has a latex allergy, which is documented in his medical record. [Id., ¶ 5]. In his complaint [ECF No. 4] and amendment thereto [ECF No. 18], he claims that in October of 2008, Malena gave him a catheter that contained latex. About two months after this incident, he spoke with Overton and she assured him that it would not happen again. Plaintiff alleges that on March 14, 2009, Malena once again issued him a catheter containing latex. He contends that he was "almost" given the product a third time on April 10, 2009, by "another" nurse. [ECF No. 4, § IV.A and C]. Plaintiff claims that both Malena and Overton were recklessly indifferently to his medical needs, in violation of his rights under the Eighth Amendment. As relief, he seeks, *inter alia*, money damages. [ECF No. 4 at 4; ECF No. 18 at 1].

The parties have completed discovery. On March 8, 2012, Defendants filed the pending Motion For Summary Judgment [ECF No. 62 ], an accompanying Brief [ECF No. 63], their Concise Statement of Undisputed Material Facts [ECF No. 64], and their exhibits [ECF Nos. 65, 69]. Plaintiff has filed a response to Defendants' motion, which he has entitled Motion In Supporting Factual Positions of Plaintiff Valid Claim [ECF No. 70].[3]

---

[3]     In this document, Plaintiff contends that he "disclaim[s]" Defendants' motion for summary judgment. [ECF No. 70]. He challenges some of the evidence upon which they rely, submits his own affidavit as well as the affidavits of other inmates (in which they attest to Malena's purported difficult reputation and the severity of Plaintiff's rash). He also provides legal argument in support of his contention that summary judgment should be denied. He entitled this document a "motion," and, therefore, it was docketed as such. The Court shall enter an order that terminates it as a motion. The Court has appropriately considered it as Plaintiff's response to Defendants' motion for summary judgment.

## B.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."  Garcia v. Kimmell, 381 F.App'x 211, 213 (3d Cir. 2010) (per curiam) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co.

3

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972).  Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Thus, for example, the mere allegation by Plaintiff that Defendants were deliberately indifferent to his serious medical needs is insufficient to establish that there is a genuine issue of material fact. Rather, the allegation must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

The Local Rules of this Court also required Plaintiff to file a Responsive Concise Statement (with an appendix of documents referenced therein), which responded to each numbered paragraph in Defendants' Concise Statement of Material Facts by:  (1) admitting or denying whether each fact contained in Defendants' document is undisputed and/or material; (2) setting forth the basis for the denial if any fact contained in Defendants' document is not admitted in its entirety, with appropriate reference to the record; and, (3) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that he asserts are necessary for the Court to determine the motion for summary judgment.  W.D. Pa. LCvR 56(C)(1).  Plaintiff did not file a document in which he responded to each numbered paragraph in Defendants' Concise Statement of Material Facts.  A litigant's failure to file the required responsive concise statement works to his detriment.  "[A]lleged material facts set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement by the opposing party."  W.D. Pa. LCvR 56(E).  See also Carnegie Mellon University v. Marvell Technology Group, Ltd., No. 09-cv-290,

2011 WL 1044652, at *3 (W.D.Pa. Mar. 18, 2011); <u>84 Lumber Co., L.P. v. Bryan Const. Co.</u>, No. 09-cv-1030, 2011 WL 666209, at *5 (W.D.Pa. Feb.14, 2011).  In his response to Defendant's motion for summary judgment [ECF No. 70], Plaintiff does set forth in separately numbered paragraphs a few facts that he contends are disputed, and the Court has considered those in evaluating whether summary judgment is appropriate.

### C.    Discussion

#### (1) The first incident

In his complaint, Plaintiff claimed that in October of 2008, Malena was working at the infirmary and gave him medical supplies, including a catheter.  [<u>See also</u> ECF No. 64, ¶ 7].  He did not read the package labeling and did not notice the word "latex" printed on the label.  [<u>Id.</u>, ¶ 8].  He put the catheter on around 10 p.m. before he went to bed, and when he woke in the morning he was having a reaction from the exposure to the latex.  [<u>Id.</u>, ¶ 9].  He went to the garbage and found the packaging, which indicated the catheter contained latex.  [<u>Id.</u>, ¶ 10].  Plaintiff says he was seen in medical several hours later by Daniel Telega, a Physician's Assistant at SCI Albion.  [<u>Id.</u>, ¶ 11].

Although he initially thought that this incident had occurred in October of 2008 (he used the date October 7 in his subsequent grievance), Plaintiff's medical records demonstrate that September 23, 2008, was the date he was seen by Telega regarding a rash that Plaintiff believed was caused by latex exposure.  [<u>Id.</u>, ¶¶ 13-14].  Plaintiff saw Telega again for additional treatment on October 16 and 23, and then on November 5, 2008.  [<u>Id.</u>, ¶¶ 18-21].  He was also seen by Dr. Bashline on October 10, 2008, because he was "still having problem with penis rash[.]"  In his notes for November 5, 2008, Telega wrote:  "Per inmate, 'everything healed except for the top.'  PA noted meatal rash mostly resolved with

eschar superior to meatus[.]" Dr. Bashline saw Plaintiff five days later on November 10 and he wrote "No mention of penis rash." [ECF No. 65-2 at 12, Defs' Ex. 6].

Defendants have submitted evidence to support their contention that Malena was not working on the days that this first incident allegedly occurred (September 22 or 23, 2008, or October 7, 2008). [ECF No. 64, ¶¶ 63-65]. Plaintiff has not submitted any evidence to refute Defendants' evidence in this regard.

For the next few months, Plaintiff had no further problems and was not given any latex catheters. [Id., ¶ 22]. However, by the middle of January he decided to file a grievance over the incident. On January 12, 2009, he filed Grievance No. 256793 on the required DC-ADM 804 form. He wrote:

> [My] grievance is the [incompetence] of the medical dept. I have allergies they are "A.S.A. and Latex." Medical gave me my medical supply and there was latex in some of the stuff they gave me. I did not [sic] there was latex. I have to trust in them not to give me the wrong stuff. But they did give me stuff with latex and I used it not know[ing] it had latex. And I to [sic] an allergy reaction to it my penis turned black and started to get a bunch of little bubbles on the head of my penis. This happened around 10-7-8. I seen the PA about it. He said to use zinc oxide. Did not help. Went back to him on 10-23-08 he gave me some miconazole told me to use it for 30 days. I did it took 60 days to clear up. I need to see the total damage if any before I filed a grievance. I now have scars on my penis. They look disgusting to me like I have some kind of disease now they show real bright and [stick] out like a sore thumb.
>
> Seeing it makes me depressed being deformed…. I would like to have a talk with the head of medical to see if we can't come to some kind of agreement … between me and medical dept.

[ECF No. 65-1 at 4, Defs' Ex. 1].[4]

Overton was assigned to respond to Plaintiff's grievance and she met with him on January 22, 2009. [ECF No. 64, ¶ 28]. He told her that he had written the grievance because he wanted to make sure that the mistake did not happen again. [Id., 5]. According to Overton, Plaintiff was critical of the

---

[4]     The Court has corrected minor spelling errors contained in this grievance and the others quoted herein.

medical department and nursing staff generally, and did not complain about any particular individual. [Id., ¶ 33]. Plaintiff disputes this. He stated during his deposition that he told Overton that Malena was the one who had given him the latex catheter. [ECF No. 65-1 at 31, Defs' Ex. 4]. He admitted to Overton that he had looked at the catheter at the time, but did not notice it was latex either. [ECF No. 64, ¶ 31]. He said that he had had no further problems with his supplies since October. [Id., ¶ 32].

During their meeting, Plaintiff also told Overton that he wanted to be able to pick up his medical supplies once a week, rather than on Monday, Wednesday and Friday, as scheduled. [Id., ¶ 34]. Overton informed Plaintiff that she would look into a weekly pick-up for his supplies. [Id., ¶ 35]. Although she could not confirm that he in fact had received a latex catheter, she assured him they would do their best to make sure mistakes do not happen. [Id., ¶¶ 36, 37]. She subsequently passed this information on to the medical and nursing staff supervisors, reminding everyone of the need to be careful when distributing supplies. [Id., ¶ 38]. Overton states that she did not discuss Plaintiff's allegation with Malena because he had not mentioned Malena to her. [Id., ¶ 56-57].

On January 26, 2009, Overton issued the Initial Review Response ("IRR") to Grievance No. 256793:

> [Plaintiff] was interviewed on January 22, 2009. He contends that on or around October 7, 2008 he was given latex catheters which caused him to have an allergic reaction. [Plaintiff] states he was seen and treated by PA Telega. [Plaintiff] states he wrote the grievance so the mistake does not happen again. [Plaintiff] admits that he looked at the catheter that was issued and did not notice that it was latex. [Plaintiff] admits that he has not had any problems with his catheters since October. Consider this grievance resolved.

[ECF No. 65-1 at 5, Defs' Ex. 1].

### (2) The second incident

Plaintiff claims that Malena gave him another latex catheter when she was handing out supplies on March 14, 2009. He subsequently put it on without reading the label, but when he started to feel a

burn he immediately took it off. [ECF No. 64, ¶ 23]. Although Plaintiff's medical record does not reflect any visit to medical or PA Telega in connection with the incident [id., ¶ 24], Plaintiff contends that he saw Telega in an "emergency trip to his office" and that Telega "said to use the cream" to treat the rash. [ECF No. 70, ¶ 4].

Defendants have submitted evidence to support their contention that Malena was not working on the day that this second incident allegedly occurred (March 14, 2009). [ECF No. 64, ¶ 63]. Plaintiff has not submitted any evidence to refute Defendants' evidence in this regard.

On March 29, 2009, Plaintiff filed Grievance No. 267430 on the required DC-ADM 804 form. He wrote:

> This grievance is on the medical dept. and a follow-up to grievance No. 256793. I wanted an agreement between myself and the medical dept. and all parties would be satisfied and no further actions would be needed. A little agreement did occur or at least I thought so. On January 22, 2009, things started to happen to uphold the agreement. The agreement was the stuff I would receive would be latex free and I could receive my supplies on a weekly basis and I would not take any more actions for medical malpractice. I wrote Ms. Overton on the week of 3-16-09 and requested to talk with her. She never answered my DC-135A form "Inmate Request to Staff." I did hear about the request by third party Mr. Patz. The agreement has been broke. So Grievance No. 256793 is no longer resolved[.]

[ECF No. 65-1 at 11, Defs' Ex. 2].

The Grievance Coordinator rejected this grievance on April 2, 2009, on the basis that the issues presented in it had been previously reviewed and addressed in Grievance No. 256793 and, therefore, Plaintiff's complaints had to be made in an appeal of that grievance. [ECF No. 64, ¶ 45; ECF No. 65-1 at 12, Defs' Ex. 2].

Plaintiff filed an appeal of Grievance No. 256793 to SCI Albion's Superintendent one month later, on May 2, 2009. [ECF No. 65-1 at 6, Defs' Ex. 1]. He indicated that in March of 2009, he had

received another latex catheter and, therefore, the agreement that he had reached with Overton had been

"short lived."  He wrote:

> I should not receive these types of items but your incompetent staff of a medical dept.
> loves to give me these items.  I think they have a problem with me and Ms. Overton has
> to get the butter out to heal the mistakes her incompetent staff do.  It's not fair to her to
> have to keep doing this.

[Id.]

On May 4, 2009, SCI Albion's Superintendent dismissed the appeal as untimely.  [ECF No. 65-1

at 7, Defs' Ex. 1].  Over ten months later, on March 7, 2010, Plaintiff filed an appeal of the

Superintendent's decision to the Secretary's Office of Inmate Grievances & Appeals.  He wrote:

> This appeal is on the medical dept. for medical malpractice.  They put a scar on my body.
> Now I have lifetime marks and injuries.  I want compensation for pain, suffering, undue
> stress, mental anguish, punitive damages … and transfer to another facility[.]

[ECF No. 65-1 at 8, Defs' Ex. 1].

On April 1, 2010, the Secretary's Office dismissed the appeal because it had not been timely

submitted.  It was explained to Plaintiff:

> Review of the documents you provided indicates that the Superintendent responded to
> your appeal on 5/4/2009.  In accordance with DC ADM 804, if you are not satisfied with
> the Superintendent's response, you may submit an appeal to final review within 15
> working days.  This office received your appeal on 3/12/2010 which is well beyond the
> stipulated timeframe.  You failed to provide any reason as to why your appeal is late.
> Therefore, your grievance appeal to this office is dismissed.

[ECF No. 65-1 at 9, Defs' Ex. 1].

### (3)     The third incident

Plaintiff alleged in his complaint that he was "almost" given a latex catheter a third time on April

10, 2009, by "another," unnamed, nurse.  [ECF No. 4, § IV.A and C].  During his recent deposition,

however, Plaintiff claimed that Malena was also responsible for the incident that he claims occurred on that date.  [ECF No. 65-1 at 29-30, Defs' Ex. 4].

On April 13, 2009, Plaintiff filed Grievance No. 269520, directed to the medical department "for medical malpractice."  [ECF No. 65-1 at 13, Defs' Ex. 2].  As with his other grievances, he did not reference Malena.  He wrote that the "medical dept." issued him supplies with latex and before he used one of the items he read the fine print, saw that it had latex, and did not use it.  He also saw that the label on the product showed that the "use by" date had passed.  [Id.]  He wrote:

> It has been 12 years and 6 months [since] this product was made.  I've been nice and did not sue this dept. as long as my agreement made with the medical dept. was not broke.  I have permanent scares due to incompetence of this medical dept. by medical malpractice.

[Id. at 14].

On April 17, 2009, the Superintendent denied this grievance.  [Id. at 15].

### (4)    Analysis

#### (a)    Plaintiff Procedurally Defaulted His Claims Against Malena

The Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits regardless of whether they refer to general prison conditions or to a particular incident.  Porter v. Nussle, 534 U.S. 516 (2002); see also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").  "Compliance with prison grievance procedures … is all

that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to

comply with the grievance procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v.

Bock, 549 U.S. 199, 217-18 (2007).

The grievance procedure that was in effect during the relevant time is set forth in DC-ADM 804

(effective Jan. 3, 2005 to Dec. 7, 2010).  Section VI of that version of DC-ADM 804 detailed what had

to be included in a grievance:

> The inmate will include a statement of the facts relevant to the claim.... *The inmate will
> identify any person(s) who may have information that could be helpful in resolving the
> grievance*…. [T]he inmate should also include information on attempts to resolve the
> matter informally….

DC-ADM 804, VI.A.7 (emphasis added).  Thus, inmates are required to state the facts relevant to the

claim, which include identifying individuals involved.

In Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), the U.S. Court of Appeals for the Third Circuit

was confronted with a situation where, although the plaintiff (a Pennsylvania prisoner) had filed a

grievance pursuant to DC-ADM 804, the grievance failed to mention one of the individuals (Brown)

whom he subsequently named as a defendant in a civil rights action based on the same events at issue in

the grievance.  The Third Circuit Court held that because the grievance did not mention that particular

individual, the plaintiff had procedurally defaulted the claims against him:

> The text [of DC-ADM 804] is mandatory, or nearly so:  "The inmate shall include a
> statement of the facts relevant to the claim….  The inmate should identify any person
> who may have information that could be helpful in resolving the grievance.  The inmate
> should also include information on attempts to resolve the matter informally." … *To the
> extent that Brown's identity is a "fact[ ] relevant to the claim" – and it is – it was
> mandatory for Spruill to include it.  To the extent that Brown was a "person[ ] who may
> have information" or someone with whom Spruill made "attempts to resolve the matter
> informally" – and he was – Spruill was required to identify Brown if practicable.*  Spruill
> did not, and has offered no explanation for his failure to do so.  Any grievance against

Brown would now be time barred…. Thus Spruill has procedurally defaulted a claim against Brown by failing to identify him.

Spruill, 372 F.3d at 234 (emphasis added). See also Johnson v. Townsend, 314 F.App'x 436, 442 (3d Cir. 2008) (per curiam) ("While the Supreme Court has noted that 'nothing in the [PLRA] imposes a 'name all defendants' requirement,' it has also recognized that '[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not he PLRA, that define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 217-18).

The U.S. Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006), in which it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A] s a general rule ... courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90-91 (internal citations, quotations and footnotes omitted). The Supreme Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA,…. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair

opportunity to consider the claims, which required the grievant to comply with the procedural rules. <u>Id.</u> at 94.

Defendants argue that Malena is entitled to summary judgment pursuant to <u>Spruill</u> because Plaintiff failed to name her in any of the grievances that he filed. They point out that in everything that Plaintiff submitted, he complained generally about the medical department but never mentioned Malena. For example, in his first grievance (Grievance No. 256793), he referred to "medical" and "they," claiming that "medical gave me my medical supply and there was latex in some of the stuff they gave me." [ECF No. 65-1 at 4, Defs' Ex. 1]. In Overton's summary of her findings regarding his grievance, she made no mention of Malena. [<u>Id.</u> at 5]. When Plaintiff subsequently filed his appeals of that grievance, he did not identify Malena as having been involved in the alleged wrongful conduct. [<u>Id.</u> at 6-9]. In his other grievances (Grievance Nos. 267430 and 269520), he similarly failed to mention Malena. [<u>Id.</u> at 11-15]. Thus, Defendants argue, Plaintiff did not exhaust his administrative remedies against Malena and, as a result, he has procedurally defaulted his claims against her.

The Court agrees with Defendants. Malena's identity was certainly a "fact" relevant to Plaintiff's claims, and, therefore, like the prisoner in <u>Spruill</u>, Plaintiff procedurally defaulted his claims against her for failing to list her name in any of his grievances. In <u>Spruill</u>, the Third Circuit Court did ultimately conclude that the prison's grievance procedure excused the plaintiff's procedural default because, despite his failure to name the individual at issue (Brown) in his grievance, that individual was identified in the IRR as having been involved in the events of which the plaintiff complained. 372 F.3d at 234. There is no similar circumstance in this case. Although Plaintiff contends that he did mentioned Malena to Overton when they met to discuss Grievance No. 256793, DC-ADM 804 required Plaintiff to identify her in writing in his grievance, and it does not indicate to inmates that verbal identification will suffice to satisfy the notification requirement. And in contrast to what occurred in <u>Spruill</u>, where the defendant

13

(Brown) was referenced in the IRR, in this case Overton did not identify Malena in the IRR. Moreover, Overton states that she did not address Plaintiff's complaints to Malena personally [ECF No. 65-2 at 35, Defs' Ex. 8], and Plaintiff has introduced no evidence that would support a finding that Malena knew that he had complained of her conduct. Therefore, unlike the defendant in Spruill, there is no evidence in the record that Malena was ever alerted that Plaintiff had complained about her. 372 F.3d at 234 ("The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.").

In opposition to the motion for summary judgment and Defendants' argument that he failed to exhaust his claims against Malena, Plaintiff directs the Court to three Inmate's Request to Staff Member, which he wrote after the alleged incidents in question. [ECF No. 70 at 15-17]. Even if the Court considers these documents in evaluating whether Plaintiff's default should be excused, Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007), they do not assist him because he did not mention Malena in any of them either. Instead, he once again complained in general terms about the medical "department" and the "nurses" that gave him latex. For example, in the December 23, 2008, inmate's request, Plaintiff wrote to Overton that he had "a few problems that need to be addressed like *your nurses* giving out wrong supplies. I can't have latex. It is part of my medical records. *They* gave me latex." [ECF No. 70 at 15 (emphasis added)]. Likewise, in the March 16, 2009, inmate's request, Plaintiff complained to Overton that "your department messed up…. I see the marks on my body made by your department's mess-up. I should be suing your department…. I want to have another talk with you ASAP before I file my next grievance on your department." [Id. at 16]. In the April 8, 2009, inmate's request, Plaintiff

14

does not specifically complain about anything, and just informs Overton that he would like to speak with her again "face to face." [Id. at 17].

Defendants also contend that Plaintiff's claims against Malena should be dismissed because he did not properly appeal any of his grievances.[5] In Woodford, after emphasizing that "proper exhaustion" was required under the PLRA, the Supreme Court held that this requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy. Id. at 93-95. Plaintiff has provided no evidence or argument to counter Defendants' evidence and argument that Malena is entitled to summary judgment for this reason as well.

Based upon all of the foregoing, Defendant Malena is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies against her.

### (b) Plaintiff's Eighth Amendment Claim

Both Defendants contend that they are entitled to summary judgment because Plaintiff cannot establish an Eighth Amendment claim. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). Thus, "[i]n order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

---

[5]    DC-ADM 804 requires that once a grievance has received Initial Review, an inmate can file an appeal from this Initial Review to the Superintendent of the inmate's respective Institution. When an inmate has received a disposition of his appeal to the Superintendent, the inmate may appeal to the Secretary's Office of Inmate Grievances and Appeals and seek Final Review. Plaintiff did pursue an appeal of Grievance No. 256793 to the Secretary's Office, but since he filed it over ten months after the Superintendent had dismissed his grievance, his appeal was denied as untimely. [ECF No. 65-1 at 9, Defs' Ex. 1].

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. It requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Importantly, deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Estelle, 429 U.S. 105-06; Farmer, 511 U.S. 837-38; Spruill, 372 F.3d at 235. The Supreme Court has held that:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-06; see also Rouse, 182 F.3d at 197 ("it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"). Additionally, unless there is a reason to believe (or actual knowledge) that medical personnel are mistreating or failing to treat the prisoner, a non-medical prison official, such as an administrator like Overton, generally "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

An Eighth Amendment claim does not require that the defendants acted intentionally to inflict pain. "[I]t is enough that the [prison] official acted or failed to act despite [her] knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842; see Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (denial of medical treatment that exposes inmate to "the threat of tangible residual injury" constitutes deliberate indifference) (internal citations omitted). The Third Circuit Court has found deliberate indifference when a "prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" Rouse, 182 F.3d at 197 (quoting White v. Napoleon, 897 F.2d 103, 109-11 (3d Cir. 1990)). The Supreme Court has noted that deliberate indifference has been found where a physician injected a prisoner with a medication that he knew the prisoner was allergic to, and refused to treat the allergic reaction. Estelle, 429 U.S. at 104 n.10 (citing Thomas v. Pate, 493 F.2d 151, 158 (7th Cir. 1974)).

Defendants contend that there is no evidence of deliberate indifference by either of them. They point out that the evidence establishes that Malena was not even working on the dates the first and second incidents allegedly occurred. However, if the Court were to assume for the purposes of this motion that she was the staff member who handed him the items on the dates at issue, Defendants contend that the first incident (which occurred around September 22 or 23, 2008, or October 7, 2008), amounted to nothing more than a mistake on the part of Malena – a point that Plaintiff himself admits. [ECF No. 65-1 at 24, 24, Defs' Ex. 4 at 13-14, 22-23. See also ECF No. 70 at 2 "Once can be a mistake."].

As for the second, and admittedly brief, exposure to a latex catheter on March 14, 2009, and the third alleged incident on April 10, 2009, in which Plaintiff now claims Malena "attempted" to give him a latex catheter, Defendants likewise have demonstrated that there is no evidence of deliberate indifference in connection with either incident. That is because the record is devoid of evidence that

17

Malena was aware that Plaintiff previously had accused her of giving him items that contained latex. For example, there is no evidence that Overton ever told Malena, after meeting with Plaintiff on January 22, 2009, that he had accused her of giving him a latex catheter. [See ECF No. 65-2 at 35, Defs' Ex. 8, ¶¶ 6-7]. In fact, until she received this lawsuit in the mail, Malena did not know that she supposedly had given Plaintiff a latex catheter on or around any of the dates in question; she did not know that he supposedly had an allergic reaction, with blisters, swelling, pain and discoloration; and she did not know that he had filed a grievance about the incident. [ECF No. 65-2 at 41, Defs' Ex. 9, ¶¶ 2-5]. Accordingly, even if Malena did give Plaintiff a latex catheter on March 14, 2009, or on April 10, 2009, there is no evidence that she did so intentionally and with knowledge that she had previously done the same thing.[6]

Finally, at most, the evidence regarding Malena establishes negligence, which does not amount to a showing of deliberate indifference. See, e.g., Estelle, 429 U.S. at 105-06; Rouse, 182 F.3d at 197. Accordingly, although Malena is entitled to summary judgment because Plaintiff defaulted his claims against her, in the alternative she is entitled to summary judgment because Plaintiff cannot establish an Eighth Amendment claim against her.

Defendants also have established that Plaintiff cannot point to evidence of deliberate indifference on Overton's part. His claim against her is that when he met her on January 22, 2009, she assured him the mistake (being given a latex catheter) would not happen again. [ECF No. 65-1 at 32, Defs' Ex. 4]

---

[6]     Defendants also contend that Plaintiff should not be permitted to modify his claim at this time to contend that Malena had anything to do with the alleged third incident that occurred on April 10, 2009. As they point out, by changing his story now to implicate Malena as the nurse who attempted to give him a latex catheter on that date, Plaintiff is contradicting a key factual allegation in his own complaint, which he declared to be true and correct "under penalty of perjury." It is fair to say that this is akin to submitting an affidavit or statement in an effort to contradict prior deposition testimony, which is insufficient to overcome summary judgment. See Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008) (per curiam) (citing Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1988) (permissible for a district court to disregard contradictory affidavit for purposes of whether there is a material dispute of fact)). Moreover, in his April 13, 2009, grievance Plaintiff produced a copy of the package label for the latex product that had allegedly been given to him a few days earlier, and on it he wrote that it was given to him by "RN Boby," not by Malena. [ECF No. 65-2 at 10, Defs' Ex. 5; ECF No. 65-1 at 34-35, Defs' Ex. 4]. Defendants argue that at the very least, no reasonable juror could find Plaintiff's current version of the April 2009 events to be credible, as his testimony is blatantly contradicted by his own complaint, his April 2009 grievance, and his own exhibits. See Scott v. Harris, 550 U.S. 372, 380 (2007).

Plaintiff assumes Overton did not do what she promised because the mistake allegedly did happen again. According to him: "I don't know what the incident truly is, but she did not follow through or even say anything, as far as I know, to anybody because – you know, they disregarded everything." [Id. at 32-33].

Plaintiff's "assumptions" are not proof that Overton failed to act despite knowledge of a substantial risk of serious harm. The record establishes that even though she could not confirm that he had, in fact, been given a latex catheter back in October, Overton assured him that the medical staff "would do our best to make sure mistakes do not happen." She then passed this information on to the medical and nursing staff via the supervisors, reminding everyone of the need to be careful when distributing supplies. [ECF No. 65-2 at 34-34, Defs' Ex. 8, ¶ 5]. Defendants' evidence establishes that the infirmary at SCI-Albion is a busy place, with hundreds of inmates in and out for supplies and medicines. [ECF No. 65-2 at 35, Defs' Ex. 8, ¶ 8; ECF No. 65-2 at 42, Defs' Ex. 9, ¶ 5]. If a mistake was made several months after the first time Plaintiff was given a latex catheter, that in and of itself is not evidence that Overton ignored the issue or failed to take action.

Although Plaintiff contends that he brought the March 14, 2009, and April 10, 2009, incidents to Overton's attention, there is no evidence that he did so. His March and April 2009 grievances and associated request slips did not mention Malena; nor did he say in them that he had been given another latex catheter. [ECF No. 65-1 at 11, 13, 18, 19, Defs' Exs. 2 & 3]. Moreover, the subsequent grievances in March and April 2009 were dismissed by the Grievance coordinator and were not sent to Overton for investigation. [ECF No. 65-2 at 35, Defs' Ex. 8, ¶ 7]. In sum, he record simply does not support an inference of deliberate indifference by Overton.

Finally, as was the case with Malena, at most the evidence against Overton establishes negligence, which does not amount to a showing of deliberate indifference. <u>See</u>, <u>e.g.</u>, <u>Estelle</u>, 429 U.S. at 105-06; <u>Rouse</u>, 182 F.3d at 197.

In conclusion, Defendants have satisfied their burden of showing that there is no genuine issue of material fact as to whether: (a) Plaintiff exhausted his claims against Malena; and, (2) either of them was deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff has not met his burden of coming forward with specific facts showing a genuine issue for trial.

**III.    CONCLUSION**

For the foregoing reasons, the Court will grant the Defendants' Motion for Summary Judgment and direct the Clerk of Court to close this case.

An appropriate Order follows.

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  September 14, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONY LEE MUTSCHLER,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 09-265 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **SANDY MALENA, <u>et al.</u>,** | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

AND NOW, this 14th day of September, 2012, it is hereby ORDERED that Defendants' motion for summary judgment [ECF No. 62] is GRANTED.  It is further ORDERED that the document Plaintiff filed at ECF No. 70 is terminated as a motion.  The Court has appropriately considered it as Plaintiff's response to Defendants' motion for summary judgment.

The Clerk of Court is directed to close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge